Relender *v.* The State, *ex rel.* Utz, Prosecuting Attorney.

---

RELENDER *v.* THE STATE, EX REL. UTZ, PROSECUTING
ATTORNEY.

[No. 18,368.    Filed January 13, 1898.]

OFFICERS.—*Residence.—County Commissioner.—Constitutional Law.* —By the provision of section 6, article 6 of the constitution requiring all county officers to reside in their respective counties, a county commissioner is required to reside in the county where he serves as such officer, not in the general sense of the term, but he is required to actually reside therein during the time he is the incumbent of the office. *pp. 287, 288.*

SAME.—*Residence.—Removal.—Abandonment.*—Where a county commissioner violates the provision of section 6, article 6 of the constitution requiring county officers actually to reside in the county in which they hold office, by voluntarily ceasing to reside therein during his term of office it will operate as an abandonment of the office, and *ipso facto* a surrender of all rights and title to the office. *p. 288.*

SPECIAL FINDING.—*Must Contain the Ultimate or Inferential Facts.*— It is the inferential or ultimate facts established by the evidence which the special finding is designed to disclose and mere evidentiary facts will be disregarded.

OFFICERS.—*Residence.—Removal—Abandonment.—Burden of Proof.* —In an action to remove a county commissioner from office on the

ground that he had abandoned the office by removing from the State, the burden was on defendant to establish that his removal was only temporary, and where the special finding is silent in this respect it will be presumed that such fact was found adversely to the party upon whom rested the burden of proving it.   *p. 290.*

OFFICERS.—*Residence.*—*Removal.*—*Abandonment.*—Where a county officer by removing to another State abandons his office, he cannot by returning again to the county legally resume the office.   *p. 290.*

SAME.—*Ejection.*—An action by the State on the relation of the prosecuting attorney to eject an alleged usurper from office is not a mere controversy between two persons to determine which one has the best title to the office, but the defendant must recover on the strength of his own title to the office and not upon the infirmity of that of his alleged successor.   *pp. 290, 291.*

SAME.—*Removal.*—*Qualification.*—In an action to eject a county commissioner from office on account of his removal from the county, a finding that the person to succeed him as such commissioner was duly elected and commissioned as such officer shows *prima facie* that he was eligible to the office in controversy.   *p. 291.*

From the Floyd Circuit Court. *Affirmed.*

*A. Dowling* and *G. H. Hester,* for appellant.

*George H. Voigt* and *Evan B. Stotsenburg,* for appellee.

JORDAN, J.—Action by the State, upon an information filed by the proper prosecuting attorney on his own relation, to expel the appellant from the office of commissioner of the county of Floyd. The information substantially charges that the defendant was duly elected as a member of the board of commissioners of the county of Floyd, State of Indiana, at the November election in 1894; that he qualified as such commissioner, and discharged the duties of the office, until the 15th day of June, 1896, when he abandoned said office, and removed to the state of Colorado, where he has since resided; that at the November election of 1896 one Martin H. Mann was duly elected to fill said office, and has qualified as such officer, and is entitled to hold said office for the unexpired term; that on the 3d day of December, 1896, notwithstand-

ing his abandonment of the office, the defendant usurped it, and has ever since withheld the same from said Mann. The prayer is that a judgment of ouster be rendered by the court. On the issues joined, there was a trial, and the court made a special finding, and stated, adversely to the appellant, its conclusions of law, and rendered a judgment ousting him from the office, and ordered that the possession thereof be delivered to Mann.

The sufficiency of the information is not assailed. The only question presented for our decision relates to the sufficiency of the facts found by the court to support the conclusions stated and judgment rendered. The special finding substantially sets out the following facts: The defendant, appellant here, was elected to the office of county commissioner of the county of Floyd, in the State of Indiana, at the November election in 1894, and duly qualified as such commissioner, and discharged the duties of the office until June 15, 1896, when he, with his family, removed to the state of Colorado, taking with him his personal property, except a small portion thereof, where he has ever since resided, and now resides, with his family, prosecuting his usual occupation of a groceryman, and where he has for an indefinite time located his residence, "with the disclosed intention of returning to New Albany, Floyd county, Indiana, when his and his daughter's health had improved, and when he had made all the money he could." That since the defendant has so located his residence in the state of Colorado, he has returned at intervals to Floyd county, and attended every regular session of the board of commissioners of that county, except the March session of 1897, and again returned to the state of Colorado, where he now is, at his residence aforesaid. He has not attended any of the special sessions of said

board of commissioners held in the year of 1896, on July 3 and 13, August 1, 3, 4, 5, and 6, and on October 17, 26, 27, 28, 29, 30, and 31, and on November 2, 4, 5, 6, 7, and 21. When the defendant left Floyd county, on June 15, 1896, to go to Colorado, he left his post office address with the auditor, and requested him to notify him when wanted. No successor was appointed by the board of commissioners to succeed the defendant. The finding further discloses that at the general election held in November, 1896, in Floyd county, Indiana, for an election, among other officers, of a county commissioner for the first district in said county, being the same from which appellant was formerly elected, Martin H. Mann received the highest number of legal votes cast for said office, and was duly elected thereto for the unexpired term; that said Mann received a certificate of his election to said office, and duly qualified as such commissioner; that at the next regular session of the board of commissioners of the said county of Floyd, after his said election, which convened on December 3, 1896, Mann presented himself to said board, and attempted to act as a member thereof; but the defendant, being present at the time, would not permit him to act or take his place as a member of said board, or discharge the duties of his office, and ever since has refused to permit Mann to take his place and act as such commissioner. The court, upon the facts found, declared the law to be, in substance, as follows: (1) By the defendant's removal to Colorado and his subsequent residence in said state, when a member of the board of commissioners of the county of Floyd, State of Indiana, he voluntarily disabled himself to discharge the duties of the office, and thereby abandoned the same, and by said act the office became vacant from the time of his said removal; (2) that Mann is now, and ever since he was elected and quali-

fied has been entitled to hold said office; (3) that on December 3, 1896, the defendant usurped the said office of county commissioner, and ever since the said date has withheld the same from said Mann, and that the defendant ought to be ousted from the office, and possession given to Mann. The contention of counsel for appellant is that the facts do not warrant the conclusion that appellant abandoned the office in controversy, and thereby surrendered his right and title to the same. It is urged that the finding of facts shows that appellant's removal to the state of Colorado was but a temporary sojourn, and under the circumstances, was not an abandonment of the office. This claim, as made by appellant, is earnestly controverted by counsel for the State, and they contend that the legitimate inferential facts found by the court fully authorized its judgment.

The constitution of the State requires that: "All county, township, and town officers shall reside within their respective counties, townships, and towns; and keep their respective offices at such places therein, and perform such duties as may be directed by law." Const., Art. 6, section 6. Section 7815, Burns' R. S. 1894 (5731, R. S. 1881), provides for the organization in each county in this State of a board of county commissioners for the transaction of county business. Such boards are each to consist of three members, who must be qualified electors of the county, and are required to be elected by the voters of the entire county from the respective districts. Section 7816, Burns' R. S. 1894. A "county commissioner," as he is usually designated, is charged under the statutes with the performance of important public duties when acting as a member of his board; and such boards are considered the agency of the county through which its business is transacted. The members thereof also dis-

charge such other public duties as the law directs. Not only are they invested with duties of an administrative character, but are also clothed in some instances with powers of a judicial nature. Each commissioner takes an oath required by law to faithfully discharge the duties of his office, and the law requires him to perform these duties in person, as there is no authority given to perform them by means of a deputy. Members of a board of commissioners are certainly county officers, and, by the positive command of the constitution, they are required to reside within the county where they serve as such officers, and perform such duties as the law may direct. The provision of our fundamental law which restricts the residence of a county officer to his county must be construed as requiring him to be a resident thereof,—not in the general sense of that term, but he is required to actually reside therein during the time he is the incumbent of the office. This holding is fully supported by the decision in the appeal of *State* v. *Allen*, 21 Ind. 516.

That the title of a public officer may be terminated and his office vacated by abandonment is a rule of the law settled beyond controversy. As the constitution exacts of a county officer the duty to actually reside in the county in which he holds his office, if he violates this provision of the law, by voluntarily ceasing to reside therein, during his term, it will operate as an abandonment of the office, and, *ipso facto*, a surrender of all of his right and title to the office. *State* v. *Allen*, *supra; Yonkey* v. *State*, 27 Ind. 236; *Gosman* v. *State*, 106 Ind. 203, p. 208; *Osborne* v. *State*, 128 Ind. 129; Mechem Pub. Officers, sections 437, 438 and 439; 19 Am. and Eng. Ency. of Law, p. 562c*; *Bishop* v. *State, ante*, 223.

Of course, there is a well affirmed exception to this general rule, which is that a merely temporary re-

moval or absence for a limited time by the officer from the county or district to which his residence has been restricted by law, with no intention to abandon his office, or cease to discharge the duties thereof, will not result in terminating his title. The question, then, is: Do the facts in this case, when tested by the legal principles to which reference has been made, establish that the appellant abandoned the office, and thereby created a vacancy?

The following, when stripped of the items of evidence, would seem to be the facts upon which the first conclusion of law stated by the court is based: After the appellant was installed into the office in question, he continued to discharge its duties until the 15th day of June, 1896, "when he removed with his family to the state of Colorado  *  *  *  where he has ever since resided, and now resides with his family, prosecuting his usual occupation of a groceryman, and where he has, for an indefinite time, located his residence." In this statement we have eliminated the following recitals, embraced in the special finding: "Taking with him his personal property, except a small portion thereof,  *  *  *  with the disclosed intention of returning to New Albany, Floyd county, Indiana, when his and his daughter's health had improved, and he had made all the money he could." These facts, and likewise those relative to the return at intervals by appellant to Floyd county, and assuming to act as commissioner, after he had removed to Colorado, are evidentiary in their nature, and can serve no legitimate purpose, for this reason, in the special finding, and must therefore be disregarded. It is the inferential or ultimate facts established by the evidence in the case which the special finding is designed to disclose, and not those which are merely evidentiary.

*Whitcomb* v. *Smith*, 123 Ind. 329; Elliott's App. Proced., section 757.

While the evidentiary items recited in the special finding might be influential on the trial in the lower court as tending to show that appellant's removal from the county was but temporary, and that he had not terminated his residence therein, and did not intend to abandon the office, they can have no such bearing when embraced in a special finding, nor serve to break the force of the inferential facts therein stated. If, as counsel for appellant insist, his removal to Colorado was only for a temporary sojourn in that state, the burden was on him to establish that material fact; and, as the finding in this respect is silent, we are bound to presume that such fact was found adversely to him upon whom the burden of proving it rested. *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327; Elliott App. Proced., section 757.

When the appellant had once terminated his residence in Floyd county, by becoming a resident of the state of Colorado, and by such act had surrendered his right and title to the office, he could not, upon returning again to that county, legally resume the office; and his action, under the circumstances, in serving as a member of the board could be nothing more than usurpation. *Yonkey* v. *State, supra; Bishop* v. *State, supra.*

We are of the opinion that from the facts found by the court it is established that appellant, in a legal sense, abandoned the office, and thereby it became vacant, and that the court's conclusion in this respect must be sustained.

Counsel contend that the third and fourth conclusions are each unwarranted by the facts, for the reason that there is no finding that Mann was eligible to the office. Counsel urge that he may be ineligible for

the reason that he is a minor, or a nonresident of the county. But as a rejoinder to this contention, it may be said that in this action the State, by its own officer, is the moving party in seeking to eject the appellant from the office of which he is an alleged usurper. His right to hold the office therefore depends upon the strength or validity of his own title, and not upon any infirmity that may attach to or exist against that of Mann. The controversy involved in this suit is not one merely between two persons to determine which one has the best title to the office. In such cases it is true that the one who seeks to expel an incumbent of an office, and gain admission thereto himself, must allege and prove his eligibility. Or, in other words, if the complaining party in such action prevail at all, he is required to do so on the strength of his own title. *McGee* v. *State*, 103 Ind. 444, on p. 446, and cases there cited; *Reynolds* v. *State*, 61 Ind. 392, p. 403.

But, aside from this view of the case, there is, an express finding that Mann received the highest number of legal votes at such election for the office, and was given a certificate of his election, and qualified as such commissioner. These facts, at least, are *prima facie* sufficient to show that he was elected and entitled to the office in controversy. *State* v. *Shay*, 101 Ind. 36; McCrary on Elections, sections 219, 220, 221, and 222.

Under the facts found by the trial court, and the law applicable thereto, all of the court's conclusions of law are substantially correct, and the judgment rendered is a right result, and is therefore affirmed.