**ORCHARD RIDGE COUNTRY CLUB, INC., Appellant (Defendant Below),**

v.

**Jack W. SCHREY, Robert Beard, Hugh C. McCartney, Carl E. Dedman, Stamford N. Koehlinger, Charles E. Slater, Wayne R. Branstrator, Robert G. McDougall, Paul A. Lohse, Herman R. Korte, Robert F. Meyers, Leland J. Mortenson, and Milton M. Meyers, Appellees (Plaintiffs Below).**

No. 3–484 A 112.

Court of Appeals of Indiana, Third District.

Nov. 21, 1984.

Douglas E. Miller, John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for appellant.

Max E. Hobbs, Fort Wayne, for appellees.

HOFFMAN, Judge.

Appellant Orchard Ridge Country Club is an Indiana not-for-profit corporation. Appellees are club members claiming vested property rights in the Club. Following reciprocal motions for summary judgment, the trial court entered judgment in favor of the members. The Club appeals.

The facts involved in this case are not in dispute. The Club's Articles of Incorporation provide in part that:

"ARTICLE V

*MEMBERSHIP*

*SECTION 1. CLASSES.*
Active Member: Any male person over the age of 21 years may become an Active Member.
Member: Any person may become a Member by a vote of the Board of Directors, upon such terms and conditions as the Board of Directors shall from time to time deem appropriate.

\*     \*     \*     \*     \*     \*

ARTICLE IX

*Provisions for Regulation and Conduct Of the Affairs of Corporation*

The power to amend, repeal or restate the By-Laws shall be vested in the Board of Directors.
The Board of Directors shall have the right to fix reasonable Rules and Regulations governing the use of the Club, its facilities and membership . . . ."

In July of 1979, the Board of Directors amended the Club's bylaws, and added the following class of non-active members:

"ARTICLE II

*Membership*

\*     \*     \*     \*     \*     \*

*Section 2. Honorary Members.*
Upon application to the Board of Directors and surrender and transfer of his membership certificates to the Club, . . . [a]n Active Member who shall have paid dues for 20 consecutive years and has reached age 65 shall pay one-half of the current dues."

Appellees were all active members, 65 or older, who had paid active membership dues for at least twenty consecutive years. They opted into this "half honorary" class by surrendering their membership certificates, and began paying dues at one-half the rate of current active members.

In June 1982, the Board of Directors voted to abolish half-honorary status by increasing affected member's dues over a period of four years. By December 1, 1986, all such members will be restored to active membership, and will be required to pay full dues.

The members contend that this amendment is in derogation of their contract with the Club as half-honorary members. They specifically claim that if enforced, this provision will arbitrarily deprive them of vested property rights. The Club maintains that its Board of Directors acted within the scope of authority as permitted under the articles of incorporation and by-laws, which specifically empower the Board of Directors to amend bylaws and to fix membership dues.

The courts of Indiana will not interfere with the internal affairs of a private organization unless a personal liberty or property right is jeopardized. *Stansberry, etc. et al. v. McCarty et al.,* (1958) 238 Ind. 338, 149 N.E.2d 683; *State ex rel. Givens, etc. v. Marion S. Ct. Rm. 1,* (1954) 233 Ind. 235, 117 N.E.2d 553. The Board of Directors of a corporation may adopt bylaws to govern matters of internal discipline, policy and management, and these bylaws constitute a contract between the corporation and its members. *Brendonwood Common v. Franklin,* (1980) Ind. App., 403 N.E.2d 1136. In promulgating or amending bylaws, the Board of Directors is given broad discretion to fix membership qualifications, rights and duties. As stated by the Supreme Court of Indiana in the case of *The Supreme Lodge, Knights of Pythias v. Knight,* (1889) 117 Ind. 489, at 496–497, 20 N.E. 479, at 483:

"A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. [Citations omitted.] It is not one by-law or some by-laws of which the member must take notice, for he must take notice of all which affect his rights or interests. *Poultney v. Bachman,* 31 Hun, 49.

Where, as here, there is an express and clear reservation of the right to amend he is bound to take notice of the existence and effect of that reserved power. The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one. Niblack Mut. Ben. Soc., section 124. No one has a right to presume that by-laws will remain unchanged. Associations and corporations have a right to change their by-laws when the welfare of the corporation or association requires it, and it is not forbidden by the organic law. The power which enacts may alter or repeal. *Richardson v. Society,* 58 N.H. 187; *Commonwealth v. Mayor,* 5 Watts, 152; *St. Patrick's Society v. McVey,* 92 Pa.St. 510. The duly chosen and authorized representatives of the members alone are vested with the power of determining when a change is demanded, and with their discretion courts can not interfere. Were it otherwise, courts would control all benevolent associations, all corporations, and all fraternities. It is only when there is an abuse of discretion and a clear, unreasonable and arbitrary invasion of private rights that courts will assume jurisdiction over such societies or corporations. With questions of policy, doctrine, or discipline, courts will not interfere. Courts will compel adherence to the charter and to the purpose for which the society was organized, but they will not do more."

In the instant case, the articles of incorporation and bylaws constituted a contract between the state and the corporation, the corporation and its members, and the members among themselves. The articles of incorporation provided specifically that "[t]he power to amend, repeal or restate the By-Laws shall be vested in the Board of Directors." Under the bylaws, the Board of Directors retained the power "to fix the membership fees and dues and the times for the payment thereof, ...." The express terms of this contract reserved to the Board the right to amend dues schedules, and members assented to this power by maintaining their membership. The rights of membership were qualified from the outset, such that any right granted could be revoked or changed.

It remains to be determined whether members possessed vested property rights in the Club, superior to the Board's right to amend the bylaws. The members suggest that half-honorary status confers vested rights commensurate with "lifetime membership."

■ To be vested, in its accurate legal sense, a right must be complete and consummated such that it cannot be divested without consent of the person to whom it belongs. *State ex rel. Milligan v. Ritter's Estate,* (1943) Ind.App., 46 N.E.2d 736, rev'd on other grounds, (1943) 221 Ind. 456, 48 N.E.2d 993. Lifetime membership in a club is a vested right which entitles the holder to tenure for life, subject to earlier termination only through resignation or dishonorable expulsion. *See, McCaffrey v. Pittsburgh Athletic Association,* (1972) 448 Pa. 151, 293 A.2d 51; *Martin v. Town & Country Development, Inc.,* (1964) 230 Cal.App.2d 422, 41 Cal.Rptr. 47, 10 ALR3d 1347.

■ Unlike life members, half-honorary members do not receive lifetime contractual rights, nor do they receive vested property rights in the Club. Their membership contracts are subject to renewal each year, and no guarantees are implied with respect to fixed dues or the period for performance. Under Indiana's Not-For-Profit Corporation Act, members do not receive ownership rights in the assets of an incorporated Club. *See generally,* IND. CODE § 23–7–1.1–1 *et seq.* Instead, they receive the right to enjoy Club benefits so long as they pay dues and comply with membership rules and regulations. The trial court erred in finding members entitled to continuing status as half-honorary members.

The judgment of the trial court is reversed.

Reversed.

STATON, P.J., and GARRARD, J., concur.