Trajan LOZANOSKI, Filip Trajkovski, Eli Trajkovski, Trajan Budzevski, Jovan Juloski, Van Evanoff, Alex Angelov Clem Julovich, Bozin Trajkovski, Zlatan Naumovski, Zivko Naumovski and Rade Vraniskoski, Plaintiffs-Appellants,

v.

Alex SARAFIN, Jim Trajkovski, Chris Julovich, Carl Gulab, Monoly Traycoff, Pavle Lumbarkoski, Vangel Baloski, Alex Nedanovich, Risto Manivolovski and Spiro Tanaskoski, Defendants-Appellees.

No. 3–784A187.

Court of Appeals of Indiana, Third District.

Nov. 26, 1985.

Steve H. Tokarski, Nick J. Anast, Gary, for plaintiffs-appellants.

David Capp, Cohen & Thiros, Merrillville, for defendants-appellees.

GARRARD, Judge.

Saint Clement Ohridski American Macedonian Orthodox Church (the local church) was incorporated as an Indiana not-for-profit corporation in 1972. About that time, apparently, the local church petitioned to be received in the Orthodox Church in America (national church) and as a part of that petition acknowledged acceptance without reservation of the statute of the national church and "all the obligations incumbent upon" all of its parishes.

The national church is an autocephalous church of heirarchical structure. Its statute, *inter alia,* provides for church courts and establishes canonical procedure.

In 1982 the Holy Synod of the national church adopted the New Revised Julian Calendar as the liturgical calendar for all of its parishes. This decision was not well received by all members of the local church. Various difficulties arose in administering the local church, and in response the bishop of the diocese took several actions including suspension of some members of the local parish council and banning general meetings of the membership for the time being.

In July 1983 the individual plaintiffs commenced this action for injunctive relief and damages asserting they had been unlawfully denied their right to participate in parish meetings, to receive the rites due church members, to use the physical facilities of the church, and to be furnished information concerning church finances. They also complained of the failure of the church corporation to hold an annual meeting since 1981.

The defendants' answer asserted *inter alia* failure to state a claim upon which relief might be granted. The court conducted a hearing thereon and treated the motion as one for summary judgment.

The court determined that all but two of the plaintiffs have been excommunicated and those two had been suspended from membership for failure to pay dues. It determined that the national church through Bishop Boris had sole heirarchical authority over the local church. It concluded that while the corporation had not had a meeting since 1981, it had no authority to change the rules or orders of the bishop and, also, that the plaintiffs lacked standing to challenge the authority of the parish priest or the then current council since they were no longer members of the church. The court, therefore, ordered the complaint dismissed, and this appeal followed.

The essence of appellants' argument is that the trial court erred in determining the church was heirarchical and in failing to distinguish properly between the religious and [civil] corporate aspects of its existence.

The evidence was undisputed that at about the time the local church was organized it petitioned to be received into the Orthodox Church in America. The petition included an affirmation that, "we accept, without reservation, the Statute of the Orthodox Church of [sic] America." It is undisputed that the petition of the local church was accepted by the national church and the local church became a part of the

Chicago diocese. The statute of the national church was introduced in evidence. It clearly establishes a strictly heirarchical church.

■ Upon this basis the court correctly determined the hierarchical nature of the church. That some of the plaintiffs were willing to testify as to a different personal understanding or intention concerning some of these matters cannot alter the legal consequences of what was done. Furthermore, there is no contention of any fraud, such as might vitiate the proceedings of the local church's acceptance into the national church. The court did not err in determining that the local church is a part of the Orthodox Church in America and that the latter is an hierarchical church.

■ Turning to the question of the local church's existence as an Indiana not-for-profit corporation, we have no hesitation in expressing our conviction. If a church or religious group elects to incorporate under the laws of this state, then the courts have the power to consider and require that the corporation thus formed comply with state law concerning such corporations.

■ The basic law in Indiana is that courts will not interfere with the internal affairs of a private organization unless a personal liberty or property right is jeopardized. *Orchard Ridge Country Club, Inc. v. Schrey* (1984), Ind.App., 470 N.E.2d 780. Thus, the articles of incorporation and by-laws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves. *Id.*

The problem in this case derives from companion facts: the corporate articles for St. Clements were inartfully drawn initially, and no action was taken to amend or clarify them when the local church became a part of the national church.

The not-for-profit corporation act, in pertinent part, provides that "directors may be removed in any manner provided in the articles of incorporation." IC 23–7–1.1–11. It also provides that:

"The power to make, alter, amend or repeal the bylaws of a corporation shall be vested in its board of directors unless otherwise provided in the articles of incorporation. The bylaws may contain any provision for the regulation and management of the affairs of the corporation not inconsistent with the articles of incorporation and the laws of this state, including provisions respecting: the time and place of holding and the manner of conducting meetings of members; the manner of calling special meetings of members or directors; the powers, duties, tenure and qualifications of officers and directors of the corporation and the time, place and manner of electing them; requirements for bonding officers or employees; the form of membership certificates and the manner of creating and exercising proxies."

IC 23–7–1.1–8.

The articles of incorporation for St. Clement's contain nothing in Article V, Membership. Article VI, Directors, lists the original board as consisting of 20 members and then contains the direction "see attached." Following this page in the articles appears an insertion titled with the name and address of the church and the designation "Parish Council." This is followed by the names, addresses and telephone number of twenty persons. Then, under Article IX, concerning other provisions "for the regulation and conduct of the affairs of this corporation, and creating, defining, limiting or regulating the powers of this corporation, of the directors or of the members" is inserted simply a reference to the by-laws of St. Clement's.

Those by-laws recite that "[t]his Parish enters into the body of [the] Orthodox Church in America." They set forth obligations for membership and requirements of eligibility to serve on the Parish Council.

■ The record, therefore, does not disclose a situation where the defendants are palpably violating the requirements im-

posed by law upon Indiana corporations.[1] Instead, and even though the articles leave much to be desired in their manner of expression, it does appear to be their plain intent that the corporate body be governed as a part of the national church. In addition, it should be noted at this point that the substance of plaintiffs' claim does not allege a "church property dispute" as that term has been employed in the First Amendment cases. It would require our intrusion into areas where we may not venture to pursue whether the plaintiffs have been wrongfully denied the rights and privileges to which their suit lays claim. *Kompier v. Thegza* (1938), 213 Ind. 542, 13 N.E.2d 229. They are ecclesiastical matters. *United Methodist Church v. St. Louis Crossing Independent Methodist Church* (1971), 150 Ind.App. 574, 276 N.E.2d 916, 920.

Thus, we need not address the trial court's additional finding that the plaintiffs lack standing to maintain an action. We note only that this finding was not specifically challenged in appellants' brief and *Kompier* appears to so hold. 13 N.E.2d at 232.

The decision of the trial court is affirmed.

STATON, P.J., and HOFFMAN, J., concur.

1. Even the statutory requirement for annual meetings expressly provides that failure to hold any annual meeting at the designated time shall not work any forfeiture or dissolution of the corporation.